**In re Anonymous No. 102 D.B. 92**

Disciplinary Board Docket no. 102 D.B. 92.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SALTZ, *Member,* December 21, 1994—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

Respondent, [    ], was admitted to practice law in the Commonwealth of Pennsylvania on or about May 11, 1982.

On June 18, 1993, the Pennsylvania Supreme Court, pursuant to Pa.R.D.E. 208(f) and after consideration of the responses filed to its order and rule to show cause entered on January 15, 1993, ordered that respondent be temporarily suspended from the practice of law in this Commonwealth. The court order was issued after respondent failed to comply with the terms of a subpoena issued by Disciplinary Counsel directing respondent to produce certain financial records pertaining to the matters under investigation.

The Office of Disciplinary Counsel filed a petition for discipline on February 3, 1993. The petition charged respondent with professional misconduct in the handling of funds of two clients—the estate of [A], an incom-

petent for whom respondent had been appointed guardian, and [B], who had retained respondent to manage rental property for him.

In total, respondent was charged with 10 violations of the Disciplinary Rules of the Code of Professional Responsibility and the Rules of Professional Conduct related to her unprofessional mismanagement of the financial matters entrusted to her by these clients. Respondent did not file an answer to the petition.

The matter was referred to Hearing Committee [    ], which was chaired by [    ], Esquire, and included members [    ], Esquire and [    ], Esquire. A hearing on the matter commenced on June 22, 1993. After testimony was heard and documents introduced, Disciplinary Counsel requested a continuance to investigate statements made by respondent in her closing argument regarding her personal financial situation. The hearing continued on July 21, 1993 and concluded on that date.

On October 21, 1993, respondent filed a brief where she discussed the charges and the testimony she presented. In summary form, respondent said that she was a sole practitioner and that in the spring of 1987 she became pregnant, had a difficult pregnancy, that her son was born in January of 1988, that he was sickly and required a great deal of care after birth. When respondent was in the office between the spring of 1987 and 1990 the files and books prepared by her office manager appeared to be in order. The office manager took care of collecting funds and making deposits. Respondent did not return to the office full-time until the summer of 1990. During the interim between the spring of 1987 and the summer of 1990 respondent checked clients' records and effectively had her office manager and her office manager's daughter running the office. Respondent by her brief acknowledges that

money was taken from these accounts but claims that the office manager and her daughter took this money and then when they were confronted with this, they were fired. Shortly thereafter there was a theft in respondent's office at which time files, office equipment, and her computer information were stolen. Respondent says this is the reason she cannot document how certain client money was spent. Respondent denies that she converted any money to her personal use although she acknowledges that money is missing from two client accounts. With regard to the allegations that respondent misled the court, she testified that she did not knowingly and intentionally make false statements to the court and that any inaccurate answers to questions were as a result of a lack of understanding of questions and from the confusion within respondent's mind about what transpired. Respondent denies that she ever converted funds and claims that as far as she knew, money missing from her accounts was appropriately paid to her clients.

On April 5, 1994, the Hearing Committee filed its report on the matter and recommended that respondent be disbarred from the practice of law. No exceptions were filed and the matter was adjudicated at the June 22, 1994 meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

We recommend a period of suspension for five years retroactive to the date of respondent's suspension rather than disbarment for the reasons stated herein.

## II. FINDINGS OF FACT

Based upon a rather truncated record of testimony and documentary evidence, we find the facts as follows:

(1) Petitioner, whose principal office is located at Suite 400, Union Trust Building, 501 Grant Street, Pitts-

burgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent was admitted to practice law in the Commonwealth of Pennsylvania on or about May 11, 1982. Her office is located at [    ].

(3) By order dated June 18, 1993, respondent was temporarily suspended from the practice of law by the Supreme Court of Pennsylvania pursuant to Rule 208(f)(5), Pa.R.D.E.

## Charge I
### The Estate of [A], an Incompetent

(4) Respondent was appointed guardian of the estate of [A], an incompetent, by order of the Orphans' Court of [    ] County on March 8, 1985.

(5) As guardian of the estate, respondent was entrusted with the incompetent's property, including: $5,242.75—as the proceeds of the sale of the incompetent's portion of a real estate interest in [    ]; $2,000—representing incompetent's interest in property located at [    ]; $15,969—paid to respondent on behalf of the incompetent by the United States Veterans Administration.

(6) During the tenure as guardian, respondent filed at least one purported account of her disposition of the funds of the estate with the Orphans' Court.

(7) Respondent was removed as guardian of the incompetent's estate by the Orphans' Court on May 8, 1992 and ordered to pay over the assets of the estate to [C], the successor guardian.

(8) When the Orphans' Court conducted an audit of the estate, it found $13,078 in appropriate expenditures by respondent which resulted in a cash balance in the estate of $10,940.28 plus accumulated interest.

(9) At the time of the audit, respondent's estate bank account showed an actual cash balance of $4,015.11.

(10) On August 31, 1992, respondent appeared before an Investigatory Hearing Committee of the Disciplinary Board. Respondent testified under oath that she had paid the sum of approximately $5,000 to [C] as successor guardian of the estate of [A] and that said payments had been made in July or August of 1992.

(11) Respondent further testified that the payments were in the form of money orders which were paid for by funds from respondent's account in the [D] Federal Credit Union together with money that she had obtained as a personal loan.

(12) The statements as to payments to [C] were materially false in that respondent never forwarded any payments to [C] on behalf of the estate of [A].

(13) On September 24, 1992, respondent appeared before the Orphans' Court and admitted that she had not turned over any funds belonging to the estate of [A], and further testified that she had then funds of the estate on deposit estimated between $3,800 and $4,000.

(14) Respondent's representations to the Orphans' Court of [    ] on September 24, 1992 were materially false.

(15) Respondent has never accounted for the funds of the estate of [A] in an amount of approximately $4,015 plus interest accumulated thereon.

(16) On August 31, 1992 and September 24, 1992, respondent engaged in conduct involving dishonesty, deceit, and misrepresentation regarding the disposition of funds of the estate of [A].

## Charge II
### [B]

(17) On or about January 19, 1989, [B] engaged respondent to act as his attorney and collect the rents from a property located at [    ].

(18) Thereafter, respondent collected the rents on behalf of [B] in a disputed amount, but not less than $26,254.

(19) By check dated May 23, 1990, drawn on [E] Bank account no. [    ] titled, "[Respondent], attorney-at-law, escrow account," respondent drew a check payable to herself in the amount of $3,900. This check contains the notation "[B]."

(20) By check dated July 13, 1990 on the same account, respondent drew a check to herself in the sum of $600.

(21) By check dated November 19, 1990, on the same account, respondent drew a check to herself in the sum of $760.

(22) By check dated February 27, 1991, respondent drew a check to herself as [F] in the amount of $400.

(23) Each of the foregoing checks bore the notation "[B] and/or [    ]."

(24) None of the proceeds of funds represented by the aforesaid checks were received by [B] or used for his benefit.

(25) Respondent charged the proceeds of these checks against her indebtedness to her client, [B].

(26) Of the funds collected by respondent, [B] received the sum of $500 on April 21, 1988 and the sum of $100 on February 22, 1991. His father, [G], received the sum of $2,400 on his behalf by check dated February 22, 1991.

(27) In defense of not being able to offer an accounting, respondent testified about her pregnancy, the fact that she was out of the office for significant periods of time because of the pregnancy and her ill son, the fact that she believed that the funds were appropriately distributed and the fact that there had been a theft in her office after her office manager and her office manager's daughter were terminated in what respondent claims was an attempt by them to cover up their criminal activity. Respondent offered no other accounting of the funds collected on behalf of [B] until March 23, 1992, when she forwarded a document to the Pennsylvania Client Security Fund.

(28) By letter dated March 4, 1992, and submitted to the Office of Disciplinary Counsel on April 6, 1992, respondent stated that, "the amount actually owed to [B] is approximately $5,500. I am more than willing to return this money to [B]."

(29) [H], Esquire, an attorney representing [B], requested the return of [B's] money by letters dated March

13, April 14, and July 8, 1992 and received no response from respondent.

(30) Neither [B] nor his attorney have received the balance of funds due as of March 4, 1992.

(31) On August 31, 1992, before an Investigatory Hearing Committee of the Disciplinary Board, respondent falsely testified to a material fact, *i.e.,* that she had approximately $5,000 belonging to [B] on deposit in the [D] Federal Credit Union under the name [respondent].

(32) This statement was false in that respondent did not have [B's] money nor any portion thereof in the [D] Federal Credit Union at the relevant time.

## III. CONCLUSIONS OF LAW

Based upon the foregoing findings of fact, the Disciplinary Board concludes that the evidence establishes that respondent has violated the following Disciplinary Rules:

### *The Estate of [A]*

(a) R.P.C. 1.15(b)—which states that upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property;

(b) R.P.C. 3.3(a)—which states that a lawyer shall not knowingly make a false statement of material fact or law to a tribunal;

(c) R.P.C. 8.1(a)—which states that a lawyer is subject to discipline if the lawyer has made a materially false statement in, or if the lawyer has deliberately failed to disclose a material fact requested in connection with, the lawyer's application for admission to the bar or any disciplinary matter; and

(d) R.P.C. 8.4(c)—which states that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

## Matter of [B]

(a) R.P.C. 1.15(b)—which states that upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property;

(b) R.P.C. 1.4(a)—which states that a lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information;

(c) R.P.C. 1.4(b)—which states that a lawyer shall explain a matter to the extent necessary to permit the client to make informed decisions regarding the representation; and

(d) R.P.C. 8.1(a)—which states that a lawyer is subject to discipline if the lawyer has made a materially false statement in, or if the lawyer has deliberately failed to disclose a material fact requested in connection with, the lawyer's application for admission to the bar or any disciplinary matter.

## IV. DISCUSSION

Unlike many cases involving lawyers accused of mishandling client funds wherein the misconduct is acknowledged and mitigating evidence is offered on the issue of the extent of discipline, respondent here simply denied any wrongdoing with regard to conversion of client funds and/or statements made to the court. Yet, respondent was unable to present any independent evidence and/or documentation substantiating her proffered reasons as to why funds entrusted to her as a fiduciary were missing. Our task thus involves a two-step process: (1) Did respondent violate the Rules of Professional Conduct as alleged?; and, (2) if so, what disciplinary sanction should be imposed?

### Estate of [A]

A reverse analysis best describes the activities of the respondent under scrutiny, *i.e.,* the focus is on respondent's omissions, not her commissions.

First, respondent did not file regular or factually complete and substantiated accountings of the estate with the Orphans' Court. Remarkably, the accountings submitted failed to list the monthly stipends from the Veterans Administration, totaling $15,969, as an asset of the estate.

Next, when an audit by the court revealed a deficient cash balance in the approximate amount of $6,500, respondent was removed as guardian of the estate and was ordered to turn its assets over to the successor guardian. Respondent repeatedly failed to meet deadlines and appear at scheduled court hearings. At this juncture, the seriousness of respondent's failure to act peaks. Respondent did not comply with the order of the Orphans' Court directing her to deliver the proceeds of the estate. To date, respondent has not turned over the balance and, in fact, now admits that compliance is impossible because the entire fund has been depleted.

Respondent offers an explanation that a problem pregnancy and caretaking requirements for her child necessitated long absences from her office. Respondent surmises that she unwisely placed the responsibility of management of her office to employees who betrayed her trust by absconding with the client funds. The troublesome lack of documentation concerning amounts received and disbursed by the estate was attributed to a theft and flooding of respondent's office.

While the board notes that the Hearing Committee refused to credit respondent's testimony in this regard, we are mindful that it is Disciplinary Counsel's responsibility to prove its allegations with clear and convincing evidence. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 580, 506 A.2d 872, 875 (1986). There is no evidence presented by ODC to prove that respondent actually converted these funds or used these funds to her benefit. ODC did not present any handwriting expert or other such person to show that the endorsements on the checks was that of respondent. Thus, with no evidence specifically contradicting re-

spondent's version of events, but, with admitted reservation, we will consider respondent's claim that the money was stolen and that some documents were destroyed. Nonetheless, these misfortunes do not abrogate respondent's responsibility to keep accurate records of funds handled on behalf of a client nor does it relieve her of accountability for the stewardship of the property of the estate. Respondent did not offer any evidence to demonstrate that if the records could be recovered they would reflect that an accurate accounting of the estate had been accomplished and that its funds had been properly handled. All record evidence is to the contrary, manifested most dramatically by the depletion of the assets of the fund. Respondent's conduct—failure to deliver the assets of the estate and the attendant failure to render a full accounting—thus evidences a clear violation of R.P.C. 1.15(b).

Respondent's next egregious offense in the context of the [A] matter occurred when she falsely informed the Orphans' Court that the reason she did not turn over the assets of the estate was because she did not have a check to transfer the funds. In actuality, at the time of that representation, there were no funds remaining in the estate's account. Respondent continued this path when, at her appearance before the Investigatory Hearing Committee, respondent testified that she had forwarded the balance of the estate to the successor guardian in July or August of 1992. The untruth of this statement was uncovered by the new guardian's testimony that she never received any funds from respondent and from respondent's subsequent admission that her prior testimony concerning the transfer of the funds was "not the exact truth." Respondent's disin-

genuous understatement reflects a marked indifference to an attorney's solemn obligation to be truthful, particularly to a tribunal entrusted with safeguarding the public trust. Lack of candor is completely at odds with the fitness required to practice law as it undermines the integrity of the process lawyers are sworn to uphold. *Office of Disciplinary Counsel v. Holston,* 533 Pa. 78, 82, 619 A.2d 1054, 1056 (1993). Thus, respondent's knowing proffer of a false statement to the Orphans' Court evidences a violation of R.P.C. 3.3(a), and her subsequent false statements to the Investigatory Hearing Committee violate R.P.C. 8.1(a).

Also, concerning these untruths, respondent violated R.P.C. 8.4(c) because her statements were dishonest and deceitful.

### [B] Matter

It is uncontradicted that, despite repeated requests, respondent never provided [B] with an accounting of her management of his rental properties. The first documentation concerning this matter was forwarded by respondent to the Pennsylvania Client Security Fund in response to a claim filed by [B] against respondent. Respondent informed the fund that, per her calculations, she owed [B] approximately $5,500 and that she was "more than willing" to reimburse him in that amount. However, after numerous requests by [B's] new attorney, no proceeds from collection of the rents was forthcoming from respondent.

Clearly, respondent in this instance failed to provide [B] with an accounting of collections and disbursements undertaken in [B's] behalf. And, again, respondent com-

mitted the serious infraction of failing to turn over client funds entrusted to her when requested to do so for the identical reason as in the [A] matter—there were no funds belonging to the client remaining in respondent's possession. Also, consistent with the tenor of the [A] charge, respondent falsely represented that the funds were on hand—a contention belied by the bank statements offered by the Disciplinary Counsel into evidence. Based upon this evidence presented and the respondent's total lack of candor in the hearings conducted in the investigation of this charge, Disciplinary Counsel has satisfactorily proven violations of R.P.C. 1.15(b), R.P.C. 3.3(a), R.P.C. 8.1(a) and R.P.C. 8.4(c) in respondent's handling of the property.

Having discerned that respondent's misconduct, negligence and deceit resulted in a number of disciplinary infractions, the appropriate level of discipline to be levied against respondent must be determined.

Respondent's impropriety is alleged to be in dishonesty and lack of concern for the system she swore to uphold. Because such misconduct impugns the public trust and compromises the integrity of the legal system, disbarment for these types of conduct if established has been deemed an appropriate sanction. See *Holston, supra* at 83, 619 A.2d at 1056. Misuse of funds entrusted to an attorney can warrant disbarment, see *Office of Disciplinary Counsel v. Davis,* 532 Pa. 22, 33, 614 A.2d 1116, 1122 (1992) or a five year suspension. See *Office of Disciplinary Counsel v. Kanuck,* 517 Pa. 160, 535 A.2d 69 (1987).

Since respondent here has not admitted to any intentional wrongdoing in the handling of her clients'

finances, she does not present evidence designed to mitigate the seriousness of her offenses. Instead, respondent has alleged that certain events, some more plausible than others, precluded her from returning funds belonging to her clients and providing documentation evidencing her management of these funds. However, respondent's claims of personal hardship and inept office management skills, while explanatory, are not excusable. Also, respondent's assertion that she may have been experiencing problems resulting in diminished capacity to understand the magnitude of her negligence or the contradictory nature of her statements concerning accounting and possession of the funds involved was not supported by any expert testimony.

The Hearing Committee totally disbelieved respondent and in doing so, concluded that she converted the funds as well as making false statements to the Orphans' Court and to the Investigatory Hearing Committee. With regard to conversion of funds, a review of the checks and record is not clear that respondent actually did convert these funds. If we were satisfied that respondent did in fact convert these funds, then we concur that disbarment would be the appropriate recommendation. Since we do have a doubt because of lack of positive proof that she did actually convert these funds, it is our recommendation that respondent receive discipline less than disbarment.

While, as stated, we do not recognize these contentions of the respondent as precisely mitigating, because of these factors, and in consideration of respondent's lack of any disciplinary record, we are persuaded that a five year suspension, retroactive to the date of temporary suspension, is the appropriate sanction to be levied in this matter.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent, [    ], be suspended for a period of five years, retroactive to June 18, 1993.

It is further recommended that the court direct that respondent pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Board members Kerns, Lieber and McGivern did not participate in the adjudication.

## ORDER

And now, March 10, 1995, a rule having been entered upon respondent by this court on January 20, 1995, to show cause why she should not be disbarred and upon consideration of the responses filed, it is hereby ordered that the rule is made absolute, [respondent] is disbarred from the bar of this Commonwealth, retroactive to June 18, 1993, and she shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Montemuro is sitting by designation.

Mr. Justice Cappy dissents and would accept the recommendation of the Disciplinary Board for a five year suspension, retroactive to June 18, 1993.